[No. 1093.]

THE CHICOSA IRRIGATING DITCH CO. v. THE EL MORO DITCH CO. ET AL.

CONTRACTS—IRRIGATING DITCHES.

E. company having a ditch and head-gate on a stream entered into a written agreement with C. company whereby it was agreed that C. company should enlarge the E. company ditch, put in all necessary flumes, dams, and head-gates at its own expense so as to double the carrying capacity of the ditch, and in consideration thereof C. company was to have the privilege of carrying its water through the ditch thus enlarged from the head-gate to a point where the C. company ditch intersected the enlarged ditch, and after the enlargement that part of the ditch so enlarged was to be jointly maintained by the two companies each contributing its *pro rata* share of the expense. The agreement specified no period of time that it was to run, nor did it otherwise define the interests and rights of the respective parties. The C. company complied with the agreement by the enlargement of the ditch. *Held,* that the agreement vested in C. company an easement not revocable at the pleasure of E. company but bound E. company to permit C. company to carry its

water through the ditch thus enlarged as long as it continued to be used as a waterway.

*Error to the District Court of Las Animas County.*

Mr. Bo SWEENEY, with whom was Mr. JOHN A. GORDON, on the brief, for plaintiff in error.

Mr. A. C. McCHESNEY and Mr. J. C. GUNTER, for defendants in error.

BISSELL, J., delivered the opinion of the court.

The fact that this judgment was rendered on the pleadings coupled with the consideration that the plaintiff apparently has rights which the defendant evidently infracted, leads us to reverse it, though first impressions might impel its affirmance. The complaint is inartificial, and is wanting in the certainty, accuracy and clearness of statement of the plaintiff's right and title which should characterize a bill in equity. Some of the material facts are alleged with so much indistinctness and incompleteness as to render those with which they are connected inert and inefficient. The defendant however, did not demur, but answered, admitted many of the material facts and set up in *hæc verba* the contract which the parties had made. This supplied what the plaintiff omitted to aver with sufficient fullness whereby the nature and extent of the rights of the Chicosa company were somewhat clearly exhibited. This permits us measurably to estimate and declare the relative obligations of the parties and adjudge the plaintiff entitled to offer proof of the other essential elements of its case, and maintaining it in these respects, obtain a decree which shall protect the company.

The plaintiff and appellant is the Chicosa Irrigating Ditch Company, the defendants are the El Moro Ditch Company and sundry other parties, who were stockholders and either interested in the El Moro company in the ownership of the ditch, or in the doing of the acts of which the Chicosa com-

pany complained. The El Moro Ditch Company was organized prior to 1886. Neither its corporate capacity nor the character of its title to the water way are in any wise in issue, and it is enough to state that as a company, it constructed a ditch to take water from the Purgatoire river, distributing it to its stockholders or to consumers who lived along its line. The ditch ran near the town of El Moro and to the eastward, but the length, extent, and size of it are nowhere stated. The Chicosa company was organized in the year 1886, and so far as we are able to gather from the record, had no source of supply except as it might obtain water from the El Moro ditch. The Chicosa ditch was about ten miles long and started at a point about a mile east of the town of El Moro, where a division box was inserted by the parties to regulate and control the flow and distribution of the water. Whether before or after the completion of the Chicosa ditch we are unadvised, but in 1888, the Chicosa company entered into an agreement with the El Moro company to obtain water from its ditch. On the 1st of March, 1888, the parties executed a written agreement, whereby the El Moro company agreed that the Chicosa company should have the right to convey water through the El Moro ditch from its source at the Purgatoire river south of El Moro to the junction of the Chicosa and El Moro ditches. They further agreed that the Chicosa company should have the right to enlarge the El Moro ditch and increase its width at the bottom from four to eight feet, but should put in all necessary flumes, dams, and head-gates at its source at the Purgatoire river at their own expense, place the El Moro ditch in good working order, and keep it in good order and repair until the water was turned in after these changes were made. After this was done the ditch was to be under the joint control and management of the two companies, each alternately electing a ditch boss to superintend and control it from its source to the junction, the respective parties paying their legitimate proportion of expenses for its care and maintenance from the head-gate to the junction. The agreement

ran for no definite period, nor did it otherwise fix the interests and rights of the respective parties.

The ditch was run under this agreement until the fall of 1894, when the dam and headgate on the Purgatoire river were washed out by a flood. This seems to have been the commencement of the difficulty between the two corporations. The situation of the river, possibly by a change in its channel, as to which the plaintiff does not advise us, made it impracticable to replace the head-gate. This fact is conceded by the defendants, and the parties could not agree either on the point at which the water should be thereafter taken, or on the division of the expenses necessary for the repair of the ditch, and it led the Chicosa company to do what may possibly have been the inciting cause of the disagreement. At all events, as near as we are able to gather the El Moro company failed to reconstruct the dam or the head-gate, or to build any other whereby water could be procured for the two companies. We are groping a little blindly in stating some of these matters because of the indefiniteness of the complaint and the uncertainty of the answer. We simply indicate what seems to us to be the facts without in anywise concluding either party as to the proof, or intimating what our conclusions might be should the facts be otherwise than as they appear, or should the parties have any further litigation. We shall expressly limit this decision to an adjudication as to what the rights of the parties now appear to be from the bill and answer. After the companies disagreed about the rebuilding of the dam and headgate, possibly differing as to the point at which the water should be taken, the Chicosa company, fearing the loss of its water and the sacrifice of the rights of its stockholders and possible contract claimants, bought a right of way through some land from a point on the line of the El Moro ditch to a point farther up the river. Having secured this right of way, the Chicosa company dug a ditch from the river to the El Moro ditch, put in a head-gate and proceeded to run water to the junction and into their own canal. The

defendants then, as it is alleged, attempted to interfere with the water supply thus procured.   The Chicosa company charged that the El Moro company were changing the grade, deepening the old ditch from the point of junction between it and the new one constructed by the Chicosa company, which turned the water flowing through the new source back into the river.   The defendants denied the deepening of the ditch, or the doing of the thing complained of, and averred that they were simply restoring the old channel to its original condition.   Whatever the fact may be, the result undoubtedly was to deprive the Chicosa company of its supply of water.   An injunction was granted and continued until the hearing, although prior to the final decree, the court without notice granted what might be called a mandatory writ compelling the Chicosa company to permit the defendants to use the water which flowed through the new connection. These are all the facts which need be stated, save what should be mentioned respecting the course and conduct of the parties under the contract of 1888.   The Chicosa company enlarged the El Moro ditch, increased its carrying capacity to the point of junction sufficiently to carry the water necessary to furnish the Chicosa ditch with what was needed for its consumers.   It is conceded that from 1888 to 1894, the contract was observed by both parties ; they mutually bore the expenses of the maintenance and care of the ditch from the river to the point of junction of the two ditches, and so far as the allegations go the contract was completely observed.   The question arises, can the El Moro company without other allegations and proofs than those made or suggested by the bill and answer, prevent the Chicosa company from procuring its supply of water through the new connection and running it through the El Moro ditch.   We are quite of the opinion this cannot be done.   The contract between the parties was not aptly drawn and it is not clear that it was a grant of an easement in perpetuity.   It does not state with clearness and perspicuity what the rights of the Chicosa company shall be in the ditch, either as to

title, or term of enjoyment. The agreement, however, contains enough to bind the El Moro company to permit the plaintiff to carry its supply of water from the river to its ditch, so long as the El Moro ditch shall continue to be used as a water way. We do not know whether the El Moro company was simply a carrier of water, or whether it had title to lands to which the water was supplied, whereby it became not only a carrier but an owner of the water by reason of a union of its diversion and application. This however is wholly unimportant because so long as the El Moro ditch was used for the purposes for which it was constructed, that company cannot escape its obligation by virtue of its agreement to permit the Chicosa company to procure its supply of water from the Purgatoire river through that ditch. The Chicosa company did whatever was necessary to provide a way by which their ditch could be supplied. The water was taken for a series of years, and, as we have a right to infer, applied to beneficial uses, whereby the company, its stockholders or the parties contracting with it, acquired a good title to the water taken. The water was carried in a way recognized by our statutes, obtained, it is true, by contract, but a right which might have been acquired by legal proceedings. Our statutes provide a mode by which parties desiring to take water from a common source of supply may take it through the way which the first comer has constructed. Since this is true, we are without difficulty to conclude that the agreement was simply a mode adopted to do what the statute permitted otherwise to be done. In the present case the El Moro company consented that the Chicosa company should enlarge the ditch, should share in its cost and maintenance as thus enlarged, waived any right to other compensation, and agreed that the Chicosa company should enjoy so much of the El Moro ditch as was necessary for these purposes. Their right under these circumstances is clearly an easement, and as we must conclude according to our present advices, not an easement revocable at the option of the El Moro company, but a continuing one, of which

the Chicosa company could enforce the quiet enjoyment. *Wyatt et al. v. Larimer & Weld Irrigation Company*, 18 Colo. 298.

The agreement resulted in a grant of something more than a license, and if it was a license, it was so clearly executed upon a sufficient consideration as to prevent its revocation at the will of the El Moro company. Washburn on Easements, chap. 5, § 7, p. 678; chap. 3, § 3, p. 322; chap. 1, § 3, p. 99.

We do not undertake to determine as an absolute proposition of law whether a license thus given may ever be revoked, but we are quite clearly of the opinion that it cannot be revoked at the will of the licenser. He is without authority to disturb the right which he has granted, which has been entered into and enjoyed by the other party who has paid an adequate consideration for it, and if he attempts to disturb the licensee, he may be restrained from interfering with the granted privileges until the matter can be heard and determined on full proof and final hearing.

It is not necessary to consider whether the court was right in issuing its mandatory writ, or whether that should have been done, if at all, in proceedings to condemn the right of way and acquire title under the statute. It is possible the court concluded it ought not to interfere by injunction to protect the plaintiff's rights without the interposition of this condition pending the final hearing, but since the bill was dismissed it is no longer a practical question in the case.

Concluding that the court erred in dismissing the case on the bill and answer, we shall reverse the judgment with directions to the court below to permit the plaintiff to amend his complaint as he may be advised, and on answer, there being no radical change in the statement of the contractual rights of the parties, the case will proceed to trial and judgment.

*Reversed.*