[Civil No. 806.   Filed March 20, 1903.]
[71 Pac. 961.]

R. H. BURMISTER & SONS COMPANY, a Corporation, Plaintiff and Appellant, v. THE EMPIRE GOLD MINING AND MILLING COMPANY, a Corporation, Defendant and Appellee.

1. COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.—Where in good faith suit was commenced for an amount within the jurisdiction of the court, and at defendant's instance allegations were stricken from the complaint, thereby reducing the amount in controversy to a sum less than the statutory amount, it was error for the court to dismiss the action on the ground that the amount in controversy was below the jurisdictional limit.

2. WRITTEN INSTRUMENT — CONSTRUCTION — PAROL EVIDENCE — WHEN PROPER IN AID OF.—While it is elementary that the terms of a written instrument cannot be varied by oral proof regarding the same or the intent of the parties, and it is the province of the court to construe such instrument without further proof, where there is no doubt as to the meaning of the language of the instrument, it is also well established that where there is doubt as to what is the meaning of the words used, the court may and should receive proof of the circumstances out of which the written agreement grew and which surrounded its adoption, for the purpose of ascertaining the subject-matter thereof from the standpoint of the parties in relation thereto.

3. ORDER—FOR PAYMENT OF MONEY—CONSTRUCTION.—An employee of defendant gave an order on it as follows: "Please pay to B. Co. the amount due them for my monthly purchases from money due from" defendant, and said order was accepted by defendant. *Held*, that the meaning of said order is not so clear that it referred only to the amount of money due at the time as to justify the court in striking out allegations in the complaint tending to show that the order was understood by the parties as a continuing order.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge. Reversed.

The facts are stated in the opinion.

Herndon & Norris, for Appellant.

E. M. Sanford, for Appellee.

KENT, C. J.—The appellant, a corporation, brought an action against the appellee, a corporation, for the sum of $440.86; being an amount claimed to be due from the appellee upon the following order on the appellee, drawn by K. H. Sharp, one of its employees: "Prescott, Arizona, September 20, 1900. Mr. S. S. Jones, Manager Empire M. G. Co.: Please pay to R. H. Burmister & Sons Co. the amount due them for my monthly purchases from money due from the Empire M. G. Co. K. H. Sharp." Indorsed: "Accepted. S. S. Jones, Agent." The appellant, in its amended complaint, alleged that on the 20th of September, 1900, the said Sharp was indebted to the plaintiff for goods sold in the sum of $190.26; that Sharp was desirous to continue purchasing goods of the plaintiff, and plaintiff was willing to sell him goods, provided it could be secured for the indebtedness created, and that thereupon Sharp gave the plaintiff the order referred to, which was accepted by the defendant, the defendant at that time being indebted to Sharp for wages in the sum of $200; that the order was intended by Sharp and the plaintiff, and so understood by the defendant, the appellee, to be an order by Sharp on the defendant to pay to the plaintiff all moneys which Sharp had then earned and should thereafter earn under his employment with the defendant, to the amount of his indebtedness then due to the plaintiff, or that should thereafter be contracted by Sharp with the plaintiff during his employment with the defendant; that the plaintiff continued to sell goods to the said Sharp on the strength of said order to and until the 10th day of December, 1900, at which date Sharp's employment with the defendant terminated; that the aggregate amount of purchases made by Sharp from the plaintiff was the sum of $626.09, being for goods sold by plaintiff to Sharp between

September 1 and December 10, 1900; that $190.26 of that amount had been contracted at the time the order was given, and the balance, $435.83, was contracted from September 21 to December 10, 1900; that Sharp paid on said account $54.05, and on the 17th day of November, 1900, the defendant paid to plaintiff on said order the sum of $130.68; that the defendant's indebtedness to Sharp from September 20, 1900, to November 17, 1900, was $500; that defendant, instead of paying the amount of its indebtedness to Sharp to the plaintiff on said order, paid all of said indebtedness to Sharp, direct, except the said $130.68; that by reason of the premises defendant became indebted to the plaintiff in the sum of $440.86, which amount was still due and owing.

On the defendant's motion, the court struck out from the complaint all the allegations therein contained that had any reference to the continuing effect of the order after the 20th of September, 1900, leaving remaining in the complaint only sufficient allegations to support an action to recover from the defendant the amount due the plaintiff from said Sharp on the 20th day of September, 1900, as therein alleged, to wit, the sum of $190.26, of which amount, as shown by the complaint, the said Sharp had paid the plaintiff the sum of $54.05, and the defendant the sum of $130.68, or a total payment on account of the said indebtedness of $196.20 of $184.73. The court thereupon sustained the special demurrer interposed by the defendant on the ground that the court had no jurisdiction over the subject-matter of the action, in that it appeared on the face of the complaint that the amount demanded was less than $100—the statutory amount necessary for the court to have jurisdiction over the action. Judgment was entered on the demurrer for the defendant, from which judgment the plaintiff appeals to this court.

The third assignment of error of the appellant is as follows: "(3) The court erred in sustaining the demurrer to the jurisdiction of the court on the ground that the amount involved was less than $100, because it had entertained jurisdiction of the subject-matter, and had made orders in the case, and because the result of the orders of the court previously made in the case in the exercise of its jurisdiction brought about a condition of the record upon which the

demurrer to the jurisdiction was based.'' It is the well-settled rule that one cannot knowingly allege a fictitious amount for the sole purpose of bringing his case within the jurisdiction of the court, for such would manifestly be a fraud upon the jurisdiction, and when, on motion, such allegations are stricken from the complaint, and the amount left is reduced below the statutory amount, the court should then dismiss the action; it being within the sound discretion of the court to determine whether the object was to evade the law. But based upon the principle that, jurisdiction having once attached, every presumption of law is in favor of its continuance, the generally accepted rule is that where, as in this instance, in good faith a suit is commenced for an amount within the jurisdiction of the court, although that amount be reduced below the original sum, nevertheless the jurisdiction to hear and determine the case, having once attached, remains unaffected. *Rodley* v. *Curry,* 120 Cal. 541, 52 Pac. 999; 1 Ency. Plead. & Prac. 708, and cases cited.

In this case the amount claimed in the complaint, as shown by the allegations in the body of the complaint, was for a sum greater than $100—the amount necessary, under the statute, to give the court jurisdiction. The court entertained the motion of the defendant to strike out certain portions of the complaint, and granted the motion. The complaint, with these portions stricken therefrom, left a cause of action less in amount than the statutory sum of $100. Thereupon, on a special demurrer interposed, the court dismissed the action for want of jurisdiction, because the amount involved was less than $100. In this we think the court erred. The amount ·originally claimed in the complaint gave the court jurisdiction, and, the jurisdiction having attached thereby, the fact that the subsequent proceedings reduced the amount claimed to a sum less than the statutory amount was not a valid reason for the dismissal of the action. The jurisdiction having attached, there being no question as to the good faith of the plaintiff or fraud upon the court, the plaintiff was entitled to a trial on the remaining issues.

This brings us to the questions raised by the first and second assignments of error, wherein it is claimed the court erred in striking out the allegations of the complaint as above stated. The question to be determined in this regard is

whether the court was right in construing the order accepted by the defendant to mean that the defendant thereby became obligated to pay to the plaintiff only the amount due to the plaintiff from Sharp on the date of the order, to wit, the 20th day of September, 1900, or whether the court should have permitted the plaintiff to introduce evidence showing the circumstances surrounding the making of the contract and the situation of the parties, to ascertain whether or not the order should be so construed.  It is, of course, elementary that the terms of a written instrument cannot be varied by oral proof regarding the same, or the intent of the parties, and that it is the province of the court to construe such instrument without further proof, where there is no doubt as to the meaning of the language of the instrument; but it is also the established rule that, where there is doubt as to what is the meaning of the words used, the court may and should receive proof of the circumstances out of which the written agreement grew, and which surrounded its adoption, for the purpose of ascertaining the subject-matter thereof from the standpoint of the parties in relation thereto.  In this connection Mr. Taylor has said: "Whatever be the nature of the document under review, the object is to discover the intention of the writer, as evidenced by the words he used, and in order to do this the judge must put himself in the writer's place, and then see how the terms of the instrument affect the property or subject-matter.  With this view, extrinsic evidence must be admissible of all the circumstances surrounding the author of the instrument. . . . It may, and, indeed, it often does, happen that, in consequence of the surrounding circumstances being proved in evidence, the courts give the instrument thus relatively considered an interpretation very different from what it would have received had it been considered in the abstract.  But this is only just and proper, since the effect of the evidence is not to vary the language employed, but merely to explain the sense in which the writer understood it."  Taylor, Evidence, secs. 1082-1085.  In the case of *Reed* v. *Insurance Co.*, 95 U. S. 23, 24 L. Ed. 348, the case turned upon the construction to be given a clause in an insurance policy as follows, "The risk to be suspended while vessel is at Baker's Island loading, . . ." and turned upon the point whether the clause meant while the vessel was at Baker's

Island for the purpose of loading, or while it was at said island actually loading.   Mr. Justice Bradley, in delivering the opinion of the court, said: "A strictly literal construction would favor the latter meaning [actually loading].   But a rigid adherence to the letter often leads to erroneous results, and misinterprets the meaning of an instrument.   That such was not the sense in which the parties in this case used the words in question is manifest, we think, from all the circumstances of the case.   Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter, and the standpoint of the parties in relation thereto.   Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed.   This preliminary knowledge is as indispensable as that of the language in which the instrument is written.   A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes, and even absurdities."   And the court held, from the circumstances in the case, that the meaning of the clause was that the risk was sustained while the vessel was at the island for the purpose of loading.   In the case before us we do not think that the language of the order is so clear that the court was justified in placing the construction upon it that the order referred only to the amount of money due at the time, without taking into consideration the surrounding circumstances out of which it grew.   While it is true that the language used is, "The amount due"—and this would, by strict construction, mean the amount then due—such a construction is in some respects negatived by the words "monthly purchases," which may have meant purchases made monthly in the past, or purchases to be made monthly in the future.   We think that the facts in this connection, surrounding the circumstances out of which the transaction arose, would have aided the court in determining whether or not the construction placed upon the order was or was not correct, and the intention of the

parties, and that the plaintiff was entitled to go to trial upon the complaint as it originally stood, and to give such evidence of the facts surrounding the giving, as well as the acceptance, of the order, as would be competent and material in determining the construction to be put thereon. The court therefore erred in striking out the portions of the complaint which would have enabled the plaintiff to introduce such proof.

The judgment is reversed, and the cause remanded to the district court for a new trial in conformity with the views expressed.

Doan, J., and Davis, J., concur.