[No. 7047.]

NEW BRANTNER EXTENSION DITCH CO. v. KRAMER ET AL.

1. QUIETING TITLE—*Water Rights*. In this jurisdiction a bill to quiet title to a water right, and enjoin interference therewith will be entertained. Vague and uncertain provisions of the contract under which the plaintiff claims are no bar to the relief. (222)

2. CONTRACTS—*Construction*. The entire instrument is to be considered, and effect given to every word thereof, if possible. (223)

If conflict in its provisions appears the circumstances surrounding the parties and attending the execution of the instrument, and the construction placed upon it by the parties, in the performance of it, before controversy arose, may be inquired into. (223)

3. ——*Effect of Statutory Provision—Statute Construed*. The provision of Rev. Stat. § 7026 that in the sale of water "every inch shall be considered equal to an inch square under a five inch pressure" &c., is not controlling, in the construction of a contract for the enlargement of a ditch, and prescribing a volume of water to which the owners, and those bearing the expense of the enlargement, shall respectively be entitled, unless this was the intention of the parties. (230)

4. WATER RIGHTS—*Measurement of Water—Inches*. The cases as to the meaning of the word "inch", in the measurement of water, examined, and the indefiniteness of the term, disclosed. (226, 227)

5. ——*Changing Point of Diversion*. Leave to change the point of diversion can be obtained only by pursuing the course prescribed by the statute (Rev. Stat. §§ 3226-3229.) (231)

*Appeal from Denver District Court.*—Hon. H. C. RIDDLE, Judge.

Mr. JOHN T. JACOBS, Mr. H. N. HAYNES, Mr. PLATT ROGERS, for appellant.

Mr. J. C. HELM, for appellees except Denver.

Mr. MILTON SMITH and Mr. I. N. STEVENS, for City and County of Denver.

Mr. C. J. BLAKENEY, for appellees.

Mr. Justice Hill delivered the opinion of the court:

A general demurrer to the amended complaint was sustained. The plaintiff elected to stand upon this complaint and brings the case here for review. The complaint is voluminous. In substance, it sets forth the history of a certain irrigation canal, including its enlargements and extension by the predecessors of the plaintiff, under a contract with certain of the defendants, and the heirs, grantors, etc., of others, who were the former owners of the canal. It is alleged that under this contract the possession and use of the canal in perpetuity was conveyed and turned over to the predecessors of the plaintiff, their assigns, etc., under certain conditions, among which it was provided that there should be at all times left in the canal, for the use of the defendants, their heirs, grantors, etc., during the season when water is carried, etc., at certain places, etc., not less than certain amounts of water. A copy of the contract is set forth, relying thereon, a full compliance with its terms, the expenditure of large amounts, the development and irrigation of a large tract of land, etc., are alleged. It is then alleged that each year thereafter, and since 1880, that the waters carried through the canal were of certain amounts, and with the exception of certain amounts delivered to the defendants or their predecessors, has been used for the irrigation of lands belonging to the predecessors of the plaintiff, and the plaintiff's stockholders, upon whose behalf the action is also brought, in the aggregate of about six thousand acres. It is alleged that the term "inches of water" at the time of the execution of the contract, was an indefinite phrase popularly used to designate the number of square inches in a cross section of flowing water, without reference to grade, etc., and that the phrases "288" and "2592" used in the contract were selected to indicate twice the number of square inches in a cross section of a square foot of flowing water. Numerous allegations of facts are set forth

as tending to show what the parties meant by the terms used concerning the different amounts of water to be supplied the original owners of the canal, when to be supplied, the uses to be put, etc. The alleged uniform usage and practice followed by the parties and their successors ever since the execution of the contract, and up to just before the bringing in this action are set forth. These are intended to disclose the construction placed upon the contract by the parties to it, and their grantors, etc., at and from the time of its execution down to just before the bringing of this suit. These alleged facts include the assent and acquiescence of all parties at any time interested to a certain construction which gave to the defendants and their predecessors the right to have delivered to them, if and when needed, for domestic purposes and the irrigation of certain lands, not more than eighteen cubic feet of water per second of time, and to the predecessors of the plaintiff, and its stockholders, the possession of the canal and the right to all waters to be obtained therein by virtue of its original construction, enlargement, decrees secured therefor or otherwise, save and except the amount required to meet the needs of the defendants, etc., as called for in the contract, not to exceed the maximum amount of eighteen cubic feet per second of time. It is alleged that such facts, consent acquiescence, and recognition of all parties, have continued and been maintained for twenty-nine years last past. It is then alleged that notwithstanding all of these facts, just prior to the bringing of this action, and never before, most of the defendants wrongfully claim that by virtue of said contract, and the rights reserved thereby, although contrary to its intent and meaning and the uniform construction placed thereon by usage, etc., they, in the aggregate, are entitled to more water in the canal than belongs to them; that they wrongfully claim to own certain portions of the water, and interest in the canal which in fact belong to the plaintiff and its stockholders; that they cannot agree among themselves to the extent of such ownership in the aggregate; that some claim it is

one amount, viz, 67.5 second feet, others a different amount, and others still a different amount. In addition to these alleged claims, sundry and different threats and alleged wrongful acts of the defendants are set forth, such as the different individual claims of ownership, the threat to sever the water rights under such claims from the land under the ditch, to sell and convey same with intent to cause it to be changed in point of diversion to other ditches, and without sale to make changes of all water decreed to said ditch by virtue of its first three priorities, and to claim 20.7 second feet out of its fourth priority, that if the defendants are not restrained the plaintiff and its stockholders will suffer irreparable injury, and be deprived of water of great value, etc., and that unless restrained the defendants severally will, as some of them have threatened, execute written conveyances or instruments wrongfully purporting to sever all water rights above set forth from the lands to which they are appurtenant, and will assert and claim the right to convey in fee simple senior and prior appropriations of said ditch, in the aggregate to the extent of 67.5 second feet, or at least of 47 second feet, and will cause the instruments to be placed of record, etc., thereby further clouding the title of plaintiff as trustee for its stockholders, all of which will depreciate the value of its property and stock, and unless restrained and plaintiff's title to its water be determined, the defendants will severally institute suits to obtain decrees, change point of diversion, or cause their proposed vendees, under the said proposed conveyances, to institute such proceedings severally, which will cause plaintiff and its stockholders great and irreparable damages, unnecessary loss, a multiplicity of suits, etc. The prayer is to restrain the sundry acts as threatened, and that decree be entered defining and construing the respective rights of plaintiff and defendants; that the interests of the defendants and the plaintiff be decreed to exist, as alleged and that the plaintiff's title be forever quieted, and for general relief.

Stripped of its historical narrations and allegations of evidence the complaint attempts to state a cause of action as a bill in equity to quiet the title of the plaintiff in and to its use, under certain conditions, for certain purposes, of a canal and the right to certain portions of the water to be derived through the same. That a bill of this character will lie to quiet title to water rights, and to enjoin any interference with them, is well settled in this jurisdiction.—*Kimball v. Northern Colo. I. Co.*, 42 Colo. 412, 94 Pac. 333; *Town of Sterling v. Pawnee D. E. Co.*, 42 Colo. 421, 94 Pac. 339, 15 L. R. A. (N. S.) 238; *Cooper v. Shannon*, 36 Colo. 98, 85 Pac. 175, 118 Am. St. Rep. 95; *Gutheil P. I. Co. v. Montclair*, 32 Colo. 420, 76 Pac. 1050; *Bessemer I. D. Co. v. Woolley*, 32 Colo. 437, 76 Pac. 1053, 105 Am. St. Rep. 91; *Grand Val. I. Co. v. Lesher*, 28 Colo. 273, 65 Pac. 44.

The plaintiff has attempted in its pleading to deraign its title by setting forth the contract under which it claims, and alleging the facts and circumstances under which it was executed and the construction given to it by all parties to or interested in it for twenty-nine years following its execution, in order to show what was intended by the language used. If by so doing it has alleged facts which disclose that it has no right or title to that which it claims the demurrer was properly sustained. On the other hand, if there is sufficient material facts alleged to show that it is entitled to any portion of that which it claims, when, considered in connection with the alleged acts of the defendants it was not subject to a general demurrer.

The defendants contend: First, that the contract is unambiguous, and that its plain language discloses that the plaintiff does not own and was not entitled to the use or enjoyment of that which it claims, and inasmuch as it bases its title on the contract, the execution of which it alleges, for this reason the demurrer was properly sustained. Second, that if in disregard of the terms of the contract the plaintiff claims to hold the water by adverse possession account of appropriating

it to its own use for twenty-nine years, it cannot do so, because by the terms of the contract the plaintiff has had sole possession and control of the ditch, which constituted a trust estate, as trustee, which, under such circumstances, prevents it from acquiring title as against the defendants, and further because there is no allegation that the defendants acquiesced in the breach of trust by the trustee and for this reason the demurrer was properly sustained.

In considering the first question it is not our intention to place a construction upon the contract, or to consider its meaning further than to determine if the court was right in holding that it was unambiguous, and that it did not require a consideration of the facts and circumstances under which it was executed or the construction thereafter given it, in order to ascertain what was intended.   In considering the meaning to be given a written instrument it is elementary that the entire instrument should be considered, and that effect should be given to the language used in each and every part thereof, if possible to do so.   If an apparent conflict be found which, of necessity, would tend to make its meaning ambiguous or if any particular portion is ambiguous, of doubtful meaning, or susceptible of two constructions, the extrinsic circumstances surrounding the parties and attending the execution of the instrument may be looked to in order to ascertain what was intended.—*St. L. & D. L. & M. Co. v. Tierney,* 5 Colo. 582; *McPhee v. Young,* 13 Colo. 80, 21 Pac. 1014; *Wyatt v. Irrigation Co.,* 18 Colo. 298, 33 Pac. 144, 36 Am. St. Rep. 280; *True v. Rocky Ford Co.,* 36 Colo. 43, 85 Pac. 842; *Fearnley v. Fearnley,* 44 Colo. 417, 98 Pac. 819; *Burmister & Sons Co. v. Empire G. M. & M. Co.,* 8 Ariz. 158, 71 Pac. 961. In such cases it is also proper to inquire as to the construction the parties put upon the contract in its performance, up to the time the dispute arose.   *Stewart v. Austin,* 50 Colo, 248, 115 Pac. 516; *Wyatt v. Irrigation Co.,* 18 Colo. 298, 33 Pac. 144, 36 Am. St. Rep. 280; *McPhee v. Young,* 13 Colo. 80, 21 Pac. 1014; *Buckhorn Co.*

*v. Consolidated Co.,* 47 Colo. 516, 108 Pac. 27; *Topliff v. Topliff,* 122 U. S. 121, 7 Sup. Ct. 1057, 30 L. Ed. 1110; *Chicago G. W. Ry. Co. v. Northern P. Ry. Co.,* 101 Fed. 792, 42 C. C. A. 25; *Grand Valley I. R. Co. v. Lesher,* 28 Colo. 273, 65 Pac. 44; *Animas Ditch Co. v. Smallwood,* 22 Colo. App. 476, 125 Pac. 594; *North Fork Water Co. v. Medland* (C. C.) 187 Fed. 163.

The contract was evidently intended as a mutual benefit to all parties. It sets forth in substance that the first parties owned the Brantner ditch six miles long, and privileges belonging thereto; that second parties are associated to procure water for themselves and others and desire to use the ditch, and its right of way, to carry water through same to its present terminus, and thence to other lands, by extension to be hereafter constructed. First parties grant to second parties and assigns the right of way to conduct water through said Brantner ditch for irrigation, domestic, and other purposes, to such extent, and in such amount as may become practical, within capacity of said ditch when enlarged, after leaving in it at all times for use of persons constituting first party, not less than two hundred eighty-eight inches of water for each undivided ninth interest measured under five-inch pressure, so that each of said persons and assigns, etc., during irrigation season when water is flowing through said ditch, can by means of lateral ditches, at proper places, take therefrom at any and all times, not less than two hundred eighty-eight inches of water, so measured, for each ninth interest, and in like ratio for whatever interest any such first party or assigns may control. This transfer is made on certain conditions mentioned in the contract to be faithfully kept, etc. In consideration of the grant and conveyance the second parties covenant, prior to April 15th, 1880, to repair and clean out the ditch from its head to present terminus, and have same in good condition for use during the irrigation season of 1880, also before May 15th, 1880, to enlarge the ditch from head to present terminus to not less than twenty feet wide and three

feet deep, or fifteen feet wide and four feet deep, so that same will have capacity to carry sixty feet of water, i. e., so that the volume of water at any point, measured by multiplying width and depth shall equal sixty feet; that unless the ditch is so enlarged the water shall not be conducted beyond its present terminus; that after enlargement the second parties may carry through said enlarged ditch such amount of water as they may desire, to the full capacity of said ditch, after furnishing to persons constituting first parties, not less than two thousand five hundred ninety-two inches of water measured under five-inch pressure, etc. The residue or remainder of the water carried through said ditch is to belong to the second parties, and may be by them taken onward, and used as they may decide by an extension of the ditch from its present terminus to any desired point, and applied to any useful purpose. It further provides that after enlargement, the expense of keeping it in good order and repair from its head to present terminus (stating place thereof) should be borne in ratio of nine-thirtieths by first parties, assigns, etc., and the remaining twenty-one thirtieths by second parties, assigns, etc.; that the expense of maintaining the extension ditch should be borne wholly by second parties, for all time, the first parties having no interest therein.

The plaintiff claims that under the terms of the contract, considered as a whole, and construed in the light of the surrounding circumstances, at the time of its execution, and the interpretation thereafter placed upon it by all parties thereto, and successors, for twenty-nine years, that it, the plaintiff, was to have the use of all waters to be carried through the canal and extension, or in any wise appertaining thereto, except the amount required by the defendants, and their predecessors, for the irrigation of certain lands, and domestic purposes, and when needed only for these purposes, and then not at any time to exceed the aggregate of eighteen cubic feet of water per second of time, and that it, the plaintiff, is entitled to this eighteen second feet or any

portion thereof when not needed for the purposes named, and should have its title to all quieted accordingly.

It is unnecessary to attempt an analysis of the contract. It is sufficient to say that when considered in its entirety without evidence, *aliunde,* it is doubtful and uncertain as to what the words "two hundred eighty-eight inches" or "two thousand five hundred ninety-two inches" were intended to mean, for which reason, in order to ascertain what was intended, it is proper to take into consideration the extrinsic circumstances surrounding the parties attending its execution, as well as the construction the parties to it placed upon it; for these reasons the demurrer should have been overruled.

In *Stewart v. Austin,* 50 Colo. 249, 115 Pac. 516, this court recognized the ambiguity of the word "inches" in reference to any amount of water in the following language. "The expression, in inches, of the claims of the several owners is indefinite as to what was really intended. In fact, the use of the term 'inches' creates confusion. The whole volume of the appropriation, or the full capacity of the ditch, was computed, at the time, to be 864 inches, whatever that may mean."

In Mills' Irrigation Manual at page 133, referring to the measurement of water, it is said: "The term inch is often confounded with other kinds of inches. It is sometimes used to refer to a square inch of water flowing over a weir, or in an open channel, without reference to the velocity, and hence without reference to quantity. Thus, a channel having a cross-section of one square foot would be spoken of as 144 inches without regard to whether the velocity is one foot per second, two feet per second, or any other number of second feet." An example of decrees founded upon the uncertainty of cross section area is furnished in *Broadmoor Co. v. Brookside Co.,* 24 Colo. 541, 52 Pac. 792. In Long on Irrigation, section 97, it is said, "Where the decree states the quantity of water awarded in inches, it must show further what kind of an inch is intended, for the term 'inch' is itself indefinite." This fact is recog-

nized in *Bowman v. Bowman,* 35 Ore. 279, 57 Pac. 546. In *Gardner v. Wright* 49 Ore. 609, 91 Pac. 286, the court found difficulty in understanding the meaning of the word "inches" in the absence of testimony showing what was intended. In *Re Huntley,* 85 Fed., 889, 29 C. C. 9 A. 468, the court was of the opinion that the words "150 inches, statutory measurement" was too indefinite. In *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, it is recognized that the word "inches" as used by farmers is indefinite, where the pressure and method of measurement are not given. In *Dougherty v. Haggin,* 61 Calif., 305, the judgment was reversed because inches were found by taking the cross section area. The inaccuracy of the word "inch" was also recognized in *Janesville Cotton Mills v. Ford,* 82 Wis. 416, 52 N. W. 764, 7 L. R. A. 564 as well as in *Jackson Milling Co. v. Chandos,* 82 Wis., 437, 52 N. W. 759. In *Animas Co v. Smallwood,* 22 Colo. App., 476, 125 Pac. 594, in placing a construction upon a contract concerning the delivery of water, it was held that the words 'provided the total capacity of all of said boxes (10) shall not exceed four cubic feet of water per second' did not mean that the plaintiff in order to secure the agreed amount was required to use all the boxes at the same time, running at their full capacity, but was entitled to use such of the boxes as he might wish, the total capacity of which should not exceed four cubic feet, and that as bearing upon this language, the contract should be construed as a whole, and in the light of well known physical facts concerning the matters effected by the agreement.

A consideration of previous cases will disclose that in this jurisdiction we have many expressions or terms used in connection with the word "inches", when applied to the measurement of water for irrigation purposes, such as farmers inches, miners inches, customary inches, statutory inches, square inches, cubic inches, etc. An examination of the reports of our state engineers will disclose that many methods have been given designations and followed in the attempted measurement of

the running waters in our streams, canals and laterals; that the most of them at least have fallen short of absolute accuracy is readily apparent when we consider the conditions under which these measurements are attempted and the many facts which must be taken into consideration in arriving at a conclusion.

Counsel for appellees rely on *Grand Valley Irrigation Co. v. Lesher,* 28 Colo. 273, 65 Pac. 44, where the words ''each water right contains one hundred fifty inches'' were taken to mean statutory inches, for the reason as stated. ''The reasonable interpretation of this certificate, then, is that the company acknowledges that O. is entitled to 150 inches of water, to be delivered to him in some manner, and at some place. How and where, the certificate does not say. The use of the word 'inches' in the certificate must be taken to mean statutory 'inches,' as applied to water.'' It will be observed that there was nothing in the certificate to contradict this conclusion. It was also evidence of the sale of a water right, and contained nothing which showed that anything to the contrary was intended. Such is not the case here. Other portions of the contract might properly be construed to mean that a different amount was intended, for instance, it conveys the right of way to conduct, etc., to such an extent and in such amount as may become practicable within the capacity of the ditch when enlarged, etc. This calls for the total carriage of a practical amount in a ditch of a certain size; it provides that the size of the ditch when enlarged shall be not less than twenty feet in width, and three feet in depth, or fifteen feet in width and four feet deep. It then reads ''So that said ditch will have a capacity of carrying sixty feet of water. That is, so that the volume of water, at any part, measured by multiplying the width by the depth shall equal sixty feet.'' It will thus be observed that in the contract there is used the term ''practical'' in connection with ''capacity'', also a capacity of sixty feet of of water to be measured by multiplying the width by the

depth. If this last was standing alone, it would be quite evident that the parties intended by the words "sixty feet of water" to mean square feet, that is the size of the cross section of the ditch through which it flowed as they thus define it. If they intended to give to the use of the word "inches" the same definition, it follows that the same rule of measurement would apply, and while, as stated, it is not our intention to place any construction upon the contract, it is sufficient to say that when considered in connection with the alleged surrounding facts, there is ground to support the appellant's contention. This is further emphasized by the fact that the cost of maintenance is to be borne, twenty-one thirtieths by the plaintiff's predecessors and nine-thirtieths by defendants and their predecessors. This is in exact proportion to the amount of water to which each is entitled when the measurement contended by appellant is accepted; that is, if its theory is correct, each person would pay his proportion of the expenses, for future maintenance, in proportion to the amount of water to be received by him; that is when the canal was constructed to the capacity called for in the contract.

Counsel for appellees concede that the decrees for this ditch are not in harmony with their construction of the contract which gives to them 65.5 or 67.5 second feet, but they say this is of no significance because they have always expressed their intention to accept the result of these adjudications, and to not claim more than 47.88 second feet awarded to the priorities owned by them and their grantors prior to 1880, and that the only subject upon which there could be the slightest doubt is as to whether the quantity of water reserved by them should be 65.5 second feet or 47.88 second feet determined by court to belong to certain priorities for this ditch, and whether the contract should be regarded as modified by operation of law through the decree subsequently entered adjudicating those priorities. This argument discloses an element of uncertainty pertaining to what are

the relative rights of the parties from the view point of the defendants.

We agree with counsel that a law in force when a contract is made is as much a part of the contract as though incorporated in it; but we cannot agree that section 7026 R. S., 1908, is controlling unless it was so intended by the parties to the contract. The question is, what amount of water, what kind of measurement was intended, if the amount and measurement provided by section 7026 was intended, it should prevail; if the parties contracted otherwise, then their intention should control. It should be borne in mind that this is not a sale or rental of water by the plaintiff to the defendants; to the contrary, the defendants and their predecessors were the owners of the ditch and certain amounts of water, and the question is what was intended to be reserved under the contract, under which they turned the use of most of the ditch, and the waters to be secured therefrom, over to the predecessors of plaintiff; the contract does not state statutory inches. 'Tis true, it provides a measurement under a five-inch pressure the same as prescribed by statute, but the other matters prescribed by the statute are not referred to or adopted unless by implication. This is another reason why we think the other alleged matters should be taken into consideration in order to ascertain what was intended.

It is unnecessary to determine whether the plaintiff's possession and control of the ditch is in the nature of a trust estate as trustee or otherwise, or the effect which might follow such conditions. We do not understand that the plaintiff has attempted to predicate its cause of action alone upon its possession and use of the canal. Its counsel disclaim that such was intended. As we understand the complaint, the rights of the plaintiff are predicated upon the contract, and the allegations pertaining to use and enjoyment are plead for the purpose of disclosing what was intended by the language used.

It is urged because the complaint alleges that the defendants threaten to institute or cause to be instituted, etc., suits to change the point of diversion of the water in dispute, that this action cannot be maintained, for the reason that all questions involved can be settled in such contemplated suits; that the statutory method providing for change in the point of diversion is an exclusive remedy for which reason that question cannot be determined elsewhere. One phase of this question was first considered by this court in *Irrigation Co. v. Water S. & S. Co.*, 29 Colo. 469, 68 Pac. 781. It was there held that the act of 1899 provides an exclusive remedy for making such changes, for which reason after its adoption the courts were without authority to make such change in any other action or by any other method of procedure than provided in the act. This ruling has been followed ever since, but it is not applicable. The plaintiff is not seeking to change the point of diversion of any water. The primary object of this action is to obtain a decree quieting title to certain water rights which carry with them certain rights, privileges or easements in and to a certain canal. The plaintiff's constitutional, as well as statutory, right, to have this done cannot be defeated because the defendants, among other things, threaten to institute suits to change the point of diversion of water, the greater part of which it is alleged they do not own. This threat is but one of many by which it is alleged the plaintiff is damaged and its property made of doubtful value. These threatened suits may never be brought, and the question is not, what will be the relative rights of the parties in an action involving the transfer of water from this ditch, but what are their rights now. The alleged cause of action arises out of a contract. Under the circumstances, as alleged, the plaintiff is entitled to have its interest thereunder defined, and its title quieted. When this is done the question of whether the defendants can have transferred that to which they are entitled under the terms of the

contract, and whether such transfer will work injury to others which may call for conditions under which, if at all, it can be made, must be left for determination as the statute provides, and which, as this court has repeatedly held, is the exclusive method provided for the determination of those questions. But it cannot be assumed and no cases have been cited which hold that it was intended to prevent any one from bringing an action such as this for the construction of a contract and to quiet the title to such property as the plaintiff has acquired thereunder.

There was a motion to strike parts of the complaint. The general demurrer was to the balance. The motion to strike was sustained. In considering the complaint tested by the demurrer, we have taken into consideration all material facts well pleaded, whether included in the portion stricken or that remaining. From the conclusion reached, it follows that the greater part of that stricken was material as an aid in determining what was intended by the parties to the contract, all such should be reinstated. It is unnecessary to go into it in detail. The reasons given why the demurrer should be overruled are sufficient for this purpose. The judgment is reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed.*

Decision *en banc.*