[No. 3469.]

THE BROADMOOR DAIRY & LIVE STOCK CO. ET AL. v. THE BROOKSIDE WATER & IMPROVEMENT CO. ET AL.

1. WATER RIGHTS—JURISDICTION OF DISTRICT COURT.

Under sec. 11, art. 6 of the constitution, the district courts of the state had full and complete jurisdiction to hear and determine water priorities, prior to the irrigation acts of 1879 and 1881. These acts were passed for the purpose of establishing a system of procedure whereby the appropriators of water on any particular stream could have their priorities and rights determined in one proceeding; and they do not attempt to limit or extend the jurisdiction of the district court as to such rights. The evident purpose of sec. 2 of the act of 1881 (Mills' Ann. Stats. sec. 2401) in regard to the publication of sec. 1 of said act (Mills' Ann. Stats. sec. 2400) was to advise parties of its enactment, that they might protect their right to the use of water by filing a statement of claim as therein provided; but failure to file such claim in no way prejudices their rights, or precludes them from thereafter filing the same in any proceeding that might be instituted under sec. 4 of the act (Mills' Ann. Stats. section 2403). The fact that sec. 1 was not published as directed in sec. 2 does not affect the jurisdiction of the district court to hear and determine such priorities.

2. SAME—DOMESTIC USE.

The preference right to the use of water for domestic purposes incident to riparian ownership cannot be conveyed separate and apart from the land, nor diverted for such use by a company through a pipe line.

3. SAME—DECREE.

To constitute a valid appropriation of water within the meaning of the constitution and statute, the water diverted must be applied to a beneficial use, and the referee must, from the evidence, ascertain the existence of such fact before he can award any priority to a

ditch. But it is not necessary that a decree shall state upon its face that the water appropriated was applied to a beneficial use.

4. SAME—VALIDITY OF DECREE.

A decree which describes the ditch by width, depth and length and by specifying the number of acres of land to be irrigated, is sufficiently certain as to the amount of water intended as the capacity of the ditch, to uphold the decree, especially after the time for reargument, review or appeal has expired. While it fails to state the amount of water appropriated by cubic feet per second of time, or the grade of the ditch, the amount of water required to irrigate a given number of acres can easily be ascertained.

5. SAME—ESTOPPEL.

The conduct of defendant's grantors in standing by while third parties expended money in the acquisition of valuable rights upon the strength of this decree, estops defendant from assailing its validity.

*Appeal from the District Court of El Paso County.*

Messrs. PATTISON, EDSALL & HOBSON, Messrs. WOLCOTT & VAILE and Mr. C. W. WATERMAN, for appellant.

Mr. J. M. DORR, Mr. J. K. GOUDY, Mr. GEORGE STIDGER, Mr. VICTOR A. ELLIOTT and Messrs. BROOKS & ARMIT, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

This action was originally brought by appellants in the district court of El Paso county to restrain appellees from diverting, through and by means of a certain pipe line, the water flowing in Cheyenne creek, a natural stream situate in El Paso county. The material facts, as they appear from the pleadings and evidence, are in brief as follows:

The appellants, through various conveyances, are the present owners of the Cheyenne ditch, constructed in 1860 (and alleged to have been enlarged in 1862) for the purpose of diverting and appropriating the waters of said creek to the irrigation of certain lands lying thereunder. In a proceeding in the district court of El Paso county, for the adjudication of priorities to the use of water in water district No. 10,

which is coextensive with El Paso county, this ditch was, on February 15, 1882, decreed the first and third priorities to water flowing in Cheyenne creek, to an amount sufficient to irrigate four hundred acres of land. The Brookside Water & Improvement Company, through various conveyances, is the owner of the following named ditches, to wit: the Wolfe ditch, the John Wolfe ditch, the Lowry ditch, a one-third interest in the Alvord ditch, a one-tenth interest in the Harris ditch, which ditches, in the same proceeding, were adjudged certain priorities, subsequent and subject to those of the Cheyenne ditch. The original owners of these ditches were riparian owners of the land on Cheyenne creek, and had used the waters of that creek for domestic purposes continuously from 1858 and 1859. The company claims that it has succeeded to the right of its grantors to use the water for domestic purposes; and that the adjudication of priorities of the water rights in no way affects its right to the use of water for such purpose; that it constructed its pipe line for the purpose of utilizing this right, and also for conveying the waters which had theretofore been carried in said ditches, for that and other legitimate purposes. It admits that the Cheyenne ditch has, by reason of prior construction and appropriation, a right to the water of Cheyenne creek, to the amount that was actually appropriated thereby at the time it was originally constructed, for irrigation purposes only; but denies its enlargement in 1862, and alleges that the decree of February 15, 1882, adjudging the first and third priorities to the Cheyenne ditch, was null and void because the court was without jurisdiction either of the subject-matter or of the claimants of the ditches now owned by it. *First.* By reason of the insufficiency of the statements of claim filed in the adjudication proceedings. *Second.* Because it was not shown that section 1 of the act of 1881 was published as provided by section 2 of that act.

For these reasons, and also because of the indefiniteness and uncertainty of the decree itself, the court was asked to declare the same null and of no effect, and to readjudicate the priorities as between the respective ditches.

The court below held that the claim of defendant company to the water, based upon the rights acquired by its grantors as riparian owners to the use of the same for domestic purposes, could not be adjudicated in this proceeding, nor the company decreed the right to divert it for that purpose, through its pipe line; held that the requirements of section 2 of the act of 1881 were directory merely, and that the court had jurisdiction of the subject-matter and of the parties; but decided the decree void for uncertainty and proceeded to re-adjudicate the priorities of the several ditches taking water out of the Cheyenne creek, and rendered a decree accordingly. From this decree plaintiffs below prosecute this appeal, and complain of the action of the court in annulling the decree of February 15, 1882, and in readjudicating the priorities to water flowing in Cheyenne creek. Appellees, by the assignment of cross-errors, challenge the ruling denying the right of the Brookside company to avail itself of the use enjoyed by its grantors as riparian owners, through and by means of its pipe line; and in holding that the district court of El Paso county had jurisdiction of the subject-matter and the parties in the matter of the adjudication of the priorities of water rights.

Other errors are assigned and elaborately argued, but in the view we take of the controversy, it becomes necessary to consider only those that challenge the rulings of the court below upon matters touching the validity of the decree of February 15, 1882, since the rights of the respective parties depend upon the solution of this question. We will consider these objections in their inverse order. Did the court err in holding that the publication of a certified copy of section 1 of the act of 1881, as provided in section 2, was not a necessary condition precedent to the vesting of jurisdiction in the district court of El Paso county to entertain the proceeding instituted for the adjudication of the priority of water rights in district No. 10; that this provision is directory merely, and the failure of the secretary of state to comply with it did not affect the jurisdiction of the district court over the subject-matter?

Prior to the irrigation acts of 1879 and 1881 the district courts of the state were, by section 11, article 6 of the constitution, clothed with "original jurisdiction of all causes, both at law and in equity;" and therefore had full and complete jurisdiction to hear and determine water priorities. These acts were passed for the purpose of establishing a system of procedure whereby the appropriators of water on any particular stream could have their priorities and rights determined in one proceeding; and they do not attempt to limit or extend the jurisdiction of the district court as to such rights. The evident purpose of the provisions of section 2 in regard to the publication of section 1 was to advise parties of its enactment, that they might protect their right to the use of water, by filing a statement of claim as therein provided; but nothing therein indicates that a failure to file such statement should in any way prejudice their rights, or preclude them from thereafter filing the same in any proceeding that might be instituted under section 4 of the act. It is specially provided in section 6 that notice shall be given to all parties interested as owners in any ditch, of the time appointed for any hearing, to appear in court or before the referee, at the time so appointed, and file a statement of claim under oath, in case no statement had theretofore been filed. It appears from the evidence in this case that the referee gave notice as required, and that the grantors of defendant company appeared and became parties to the adjudication proceeding; statements of their respective claims were filed, and most of them testified before the referee. We think, therefore, it clearly appears as found by the court below, that the district court of El Paso county had jurisdiction both of the subject-matter and of the parties.

Upon the question of the right of appellees to divert the water for domestic use, based on the fact that their grantors, as riparian owners, had enjoyed such use since their first settlement upon the stream, the court below held that such claim could not be sustained; and that the right to use the water for such purpose must be exercised in connection with

riparian ownership. This holding is in accord with the views expressed in the recent case of *The Montrose Canal Company v. Loutsenhizer Ditch Company*, 23 Colo. 233, wherein it is said :

" While it is true that section 6 of article 16 of the constitution recognizes a preference in those using water for domestic purposes over those using it for any other purpose, it is not intended thereby to authorize a diversion of water for domestic use from the public streams of the state, by means of large canals. * * * The use protected by the constitution is such use as the riparian owner has at common law to take water for himself, his family or his stock, and the like."

The court, therefore, correctly decided that the water could not be used for such purpose by the company, through its pipe line. A question of more serious import, and one of no little difficulty, is presented by the ruling of the court below upon the validity of the decree itself. That the decree is somewhat defective cannot be denied, and it might have been open to the objections now made if it had been attacked in the time and manner provided in the act. It states the size and capacity of the ditch in width, depth and length, the date of construction and enlargement, and decrees to it the first and third priorities for sufficient water to irrigate four hundred acres of land. The court below held it void for uncertainty, because it failed to state the grade of the ditch, its carrying capacity in cubic feet per second of time, or that the waters decreed were appropriated by application to a beneficial use.

It is unquestioned that to constitute a valid appropriation within the meaning of the constitution and the statute, the water diverted must be applied, within a reasonable time, to a beneficial use ; and that the referee must ascertain from the evidence the existence of such fact before he can award any priority to a ditch. But we find no provision of the statute requiring that the decree shall state upon its face that the water appropriated was applied to a beneficial use.

The provisions are that the referee shall ascertain from the evidence the date of the construction of the ditch, its size, carrying capacity, etc., and such other facts as may tend to show a compliance with the law in acquiring the priority claimed; and prepare and draft a decree "determining and establishing the several priorities of right, by appropriation of water, of the several ditches, * * * according to the time of its said construction; * * * the amount of water which shall be held to have been appropriated by such construction * * *, describing such amount by cubic feet per second of time, if the evidence shall show sufficient data to ascertain such cubic feet; and if not, by width, depth and grade, and such other description as will most certainly and conveniently show the amount of water intended as the capacity of such ditch." Section 4, p. 154, acts of 1881; (sec. 1766, Gen. Stats. 1883).

This decree, while it fails to state the amount of water appropriated by cubic feet per second of time, or the grade of the ditch, does describe the ditch by width, depth and length, and by specifying the number of acres to be irrigated, furnishes "such other description" as shows the amount of water intended as the capacity of the ditch; and also the beneficial purpose to which the water was applied. Under the liberal rule of construction enjoined by the statute itself, section 1786, Gen. Stats., we think this decree should be upheld, and that sufficient appears upon its face to render it susceptible of enforcement. The amount of water required to irrigate a given number of acres of land can easily be ascertained; and, as a matter of fact, as appears from this record, the decree has been enforced for a number of years, and the parties have acquiesced in the distribution of water thereunder, not only during the time provided for a reargument or review, and during the period of time in which an appeal might have been taken, but until this suit was instituted, without questioning its sufficiency in this regard.

As before said, water district No. 10 is coextensive with El Paso county, and this decree affects most, if not all, of

the water rights in that district. Cases involving rights based upon it have heretofore been before this court; and while the objections now urged against it were not then presented, its validity was recognized and such rights determined accordingly. *Dorr v. Hammond*, 7 Colo. 79; *Strickler v. City of Colorado Springs*, 16 Colo. 61.

In the case of *Dorr v. Hammond*, which was a controversy as to certain priorities awarded by this decree, speaking of the adjudication before the referee, the court say:

"The proceedings below appear to have been conducted in strict conformity with the statute, and if any errors have been committed by the referee they grow out of his judgment upon the weight of the testimony."

The *Strickler* case was decided upon an agreed statement of facts, recognizing the validity of this decree, and predicating the rights of the respective parties upon priorities decreed thereby; and upon this assumption a valuable right was adjudicated and determined. In addition to the foregoing considerations, we think the conduct of defendant's grantors in standing by while third parties expended money in the acquisition of valuable rights, upon the strength of this decree, equitably estops defendant company from now assailing its validity.

Our conclusion is that the decree should have been upheld, and the court below erred in setting it aside. Its judgment, therefore, is reversed, and the cause remanded, with directions to grant the relief prayed for in the complaint.

*Reversed.*

Chief Justice Campbell not sitting.


ON REHEARING.


MR. JUSTICE GODDARD delivered the opinion of the court.

Upon rehearing counsel have favored us with elaborate and able arguments, both oral and written, upon some of the questions considered in our former opinion, and also in

support of the further claim that appellants are not now entitled to the amount of water decreed to Cheyenne ditch, notwithstanding our conclusion that the original decree adjudging such priority is valid, and not open to direct or collateral attack, because of the failure of appellant and its grantors to apply the same to the use intended; and that by reason of such nonuser they have forfeited and abandoned their right to a portion of the amount so decreed.

Upon careful consideration of the reasons urged against the correctness of the conclusions announced in our former opinion, we see no reason for changing or modifying our views as therein expressed; and we think that the record discloses two sufficient answers to the proposition now for the first time advanced, that, since the entry of the decree, appellants and their grantors have abandoned a portion of the water given to the Cheyenne ditch priority: *first*, because no such issue is presented by the pleadings; an examination of the answers of appellees fails to disclose any allegation that appellant or its grantors had failed to use the water decreed to Cheyenne ditch, or had in any way abandoned any right to any portion thereof; and *second*, because, from an examination of the testimony of the appellees themselves, it appears that appellant and its grantors have, since the year 1883, used all the water of Cheyenne creek, whenever necessary, to the detriment of appellees, and to the extent certainly of depriving them of water that they claimed to own. It is clear, therefore, that appellees are not in a position to urge the claim of abandonment.

But appellees strenuously insist that, if they are wrong upon this and every other proposition, they still have the right to conduct the amount of water through their pipe line which was theretofore used by them for domestic purposes; and that the former opinion of the court upon this question should be modified, and the cause remanded for the purpose of ascertaining how much water is necessary to supply this use; and that they be decreed the right to divert such amount through their pipe line.

We still think this claim untenable. As we have seen, the right acquired by the grantors of the defendant company to use the water of Cheyenne creek for domestic purposes was the same as that of a riparian owner at common law, and therefore inseparable from riparian ownership. It is not subject to conveyance separate and apart from the land ; nor did they attempt to convey such right to the Brookside company. The rights conveyed, as shown by the deeds contained in the record and the evidence of appellees themselves were the ditch rights or priorities claimed and held by the company's grantors under the decree of 1882. If the right to such a domestic use is unaffected by the decree, as appellees claim, then it did not pass by the conveyances to the Brookside company, and remains and is still available by the riparian owners upon Cheyenne creek.

There is nothing in our former opinion that precludes such parties from enforcing, by appropriate proceedings, their right to such use, if they are entitled to it, and prohibiting any interference therewith by appellants or others. All we do decide is that the water could not be used for such purpose by the company, through its pipe line. The right to still use water for domestic purposes from the creek itself is not in issue, and consequently is in no way determined by the decision of this case.

For the foregoing reason the former opinion is adhered to.

*Rehearing denied.*

Chief Justice Campbell not sitting.