[No. 4695.]

THE FARMERS' UNION DITCH COMPANY ET AL. v. THE · RIO GRANDE CANAL COMPANY ET AL.

1. **Water Rights—Decrees—Res Judicata.**

Except as specially provided by statute, or in case of fraud, decrees rendered in statutory proceedings under the Irrigation Act are conclusive upon the parties thereto.—P. 515.

2. **Same—Priorities of Rights—Decrees—Additional Priorities.**

Where the relative priorities of claimants of water for irrigation have once been adjudicated, such decree cannot later be modified for the purpose of establishing any additional priority, for water subsequently applied to the land, to date back to the commencement of the construction of the ditch; for if such practice were allowed, decrees could be opened up from time to time, with the result that the rights of parties to the use of water for irrigation, although adjudicated, would always be subject to attack; and in addition, appropriators subsequent to such decree would have no protection in their statutory rights.—P. 515.

3. **Water Rights—Decrees—Reversal on Appeal—Judgment in Accordance with Instructions—Effect.**

A decree establishing water rights was later set aside by the district court, and a re-adjudication made. The later decree was set aside by the appellate court, with instructions to reinstate the priorities of the parties appealing in accordance with the former decree, and to modify the later decree accordingly. Held, that the effect of the decree, rendered in accordance with such instructions, was a reinstatement of the earlier decree, and the rights of the parties thereto must be determined as if it had never been disturbed.—P. 517.

4. **Water Rights—Decrees—Collateral Attacks.**

By the constitution, the district courts of this state are courts of general jurisdiction, both in law and equity; and, by virtue of the authority thus conferred, such courts, independent of statutes, have general jurisdiction in matters pertaining to the adjudication of water rights for irrigation, nor do such statutes extend or limit such jurisdiction as to such rights. Held, that where a decree establishing priorities of water rights recited that due and legal notice was given according to the statute, the mere absence from the judgment roll of proofs, which ought to have been included, does not establish affirmatively, in a collateral attack, that the district court had no jurisdiction to enter the decree because the required notice had not been given.—P. 518.

5. **Water Rights—Increasing Flow by Tunnel—Right to Such Increase.**

Where a tunnel was driven into the mountain and the drainage water therefrom increased the flow of a stream, in the absence of a claim thereto by the owners of the tunnel, the water so obtained inures to the benefit of all taking water from such stream; and claimants, whose point of diversion is upwards of 30 miles below the point of inflow, and who have neither expended money nor labor in driving the tunnel, nor succeeded by purchase or otherwise to the rights of the persons driving the tunnel, are not entitled to divert a volume of water equal to that flowing from the tunnel, even if it be a natural increase, and assert an exclusive right thereto as against others diverting water from the stream.—P. 521.

6. **Appellate Practice—Questions Raised by Amici Curiæ.**

Where the owner of a ditch rests his right to have his appropriation determined solely upon the ground that the notice in the original proceeding is insufficiently published, the appellate court will not determine or pass upon other questions which might have been raised and which are suggested by the amici curiæ.—P. 522.

33

*Appeal from the District Court of Costilla County.*
*Hon. Charles C. Holbrook, Judge.*

Action by The Farmers' Union Ditch Company and others against The Rio Grande Canal Company and others. From a judgment in favor of defendants, plaintiffs appeal.

Decision *en banc.*                    *Affirmed.*

Mr. JUSTICE GODDARD not participating.

Mr. IRA J. BLOOMFIELD, for appellants.

Mr. C. M. CORLETT and Messrs. GOUDY & TWITCHELL, for appellees.

Mr. FRED W. STOW and Mr. FRANK J. ANNIS, *amici curiae.*

CHIEF JUSTICE GABBERT delivered the opinion of the court:

A statutory adjudication of water rights for the purposes of irrigation was had in Water District No. 20, by proceedings commenced in 1889 and concluded in 1891. In October, 1901, The Farmers' Union Ditch Company instituted proceedings for a further adjudication of rights in this district. The remaining appellants joined in these proceedings, to which appellees were made parties. From the final judgment rendered, the parties claiming to be aggrieved thereby have brought the case to this court for review by appeal. The facts necessary to an understanding of the questions involved will be stated in connection with the propositions urged by the respective appellants.

The Farmers' Union Ditch Company and the appellees appeared in the original proceedings, and by decree duly entered therein, the respective rights of these parties were determined. It is now con-

tended on behalf of The Farmers' Union Ditch Company that, since the rendition of the decree of 1891, additional land under its ditch has been brought under cultivation, and additional water actually applied to such land, and by the proceedings now under consideration, it seeks to have the right to such water relate back to the date work was commenced upon its ditch. This the trial court denied. That judgment was correct. It has been so frequently determined by this court that, except as specially provided by the statutes, or in case of fraud, decrees rendered in statutory proceedings under the Irrigation Act are conclusive upon the parties thereto, that an extended discussion of the question would not seem necessary.—*New Mercer D. Co. v. Armstrong,* 21 Colo. 357; *Louden Canal Co. v. Handy D. Co.,* 22 Colo. 102; *Ditch Co. v. Ditch Co.,* 22 Colo. 115; *Canal Co. v. Loutzenheiser D. Co.,* 23 Colo. 233.

The object of the statutes providing for the adjudication of water rights was to settle questions of the relative priorities of claimants of water for the purpose of irrigation. In the case at bar that question, including the quantity of water to which each was entitled, was settled by the decree of 1891. As between The Farmers' Union Ditch Company and the appellees, the former, by the proceedings instituted, seeks to ignore this adjudication and have a readjudication, which would change that decree. This cannot be permitted, unless we depart from the rule that a statutory adjudication of water rights is *res judicata* between the parties. Should the contention of counsel for The Farmers' Union Ditch Company obtain, then adjudication proceedings under the statute are of no avail, so far as the settlement of rights are concerned, but could be opened up from time to time, with the result that the rights of parties to the use of water for irrigation purposes,

although adjudicated, would always be subject to attack in the manner attempted in this case. But counsel for The Farmers' Union Ditch Company insist that it is not sought to attack the decree of 1891; that it is only sought to establish an additional priority, which the ditch company could not establish at the time of the original proceedings, to which it is now entitled by reason of the actual application of water to additional lands since the rendition of the original decree, the right to which, under the doctrine of relation, should relate back to the time of the commencement of the construction of its ditch. The position is not tenable. If such an award could now be made, it would change the decree by awarding a right to the use of water in volume and priority, to the detriment of others whose rights were established by the original adjudication proceedings. The fallacy of the contention is emphasized by the concession that the rights now claimed could not have been established in the original adjudication proceedings. If the facts at the time when the decree of 1891 was rendered did not entitle The Farmers' Union Ditch Company to the additional water now claimed, then certainly the original decree cannot be disturbed upon facts arising since its rendition, nor can The Farmers' Union Ditch Company invoke the doctrine of relation as to rights which have accrued since that date, so as to have the effect of changing that decree and the relative rights of the parties to the original adjudication proceedings, as thereby established. The necessity for this conclusion is apparent in the circumstances of this case. From time to time, for the period of about ten years prior to the commencement of these proceedings, consumers of water from the various ditches affected by the decree of 1891, have secured water rights from such ditches, to improve farms. They had the right to assume that this

adjudication, except in accordance with the statutes, could not be disturbed, and their rights to the use of water which they had acquired could not be changed to their detriment.  But should the contention of counsel on behalf of The Farmers' Union Ditch Company obtain, then an adjudication of water rights under the statute affords no protection to those who have improved farms under ditches awarded priorities by the decree of 1891, and from which they obtained water to grow crops upon their lands.  As before indicated, the purpose of the law, in providing for an adjudication of water rights, was to settle the priorities to the use of water for irrigation purposes, and in order to effect this object it must necessarily follow that all parties to such proceedings are concluded thereby, and cannot have the same reviewed or changed except in the manner, or within the time, which the law provides.  To hold otherwise would render the title to water rights, although fixed by adjudication proceedings, of that uncertain nature that they would be of little value.

The decree of 1891 was set aside by judgment of the district court of Costilla county in 1896, and judgment rendered, readjudicating water rights in district No. 20.  An appeal was taken from this judgment, which resulted in a reversal, with instructions to the district court to reinstate the priorities, granted to the parties appealing by the decree of 1891, and to modify its decree accordingly.  *Rio Grande L. & C. Co. v. Ditch Co.*, 27 Colo. 225.  For the purposes of this case it is urged by counsel for appellants that the decree entered in accordance with the mandate of this court is the only one to consider.  We cannot agree with that contention.  The effect of the decree rendered in accordance with the views expressed by this court was, in effect, a reinstatement of the original decree of 1891, and the rights of the

parties to this proceeding must be determined thereby, the same as though it had never been disturbed.

*Waterman v. Hughes*, 33 Colo. 270 (80 Pac. 891), is relied upon by counsel for appellants in support of his contention that the action instituted below can be maintained. The cases are entirely different. *Waterman v. Hughes* was an action to establish rights under a conditional decree, while the decree attacked by the present proceeding was in all respects final.

The conclusion reached with respect to the contention on behalf of The Farmers' Union Ditch Company disposes of the claim urged by counsel on the part of the owners of the Anaconda ditch, except in so far as the rights of the latter may be affected by the alleged defect of the notice given in the original adjudication proceedings. This same question is raised by the owner of the Jessup ditch. The owners of the Anaconda and Jessup ditches did not appear in the adjudication proceedings of 1891, and consequently no decree was rendered with respect to the rights of their ditches. They now contend that they are entitled to have their rights adjudicated as though such proceedings were never had, because of a defect in the publication of notice. The defect in the publication of the notice of the original adjudication proceedings, as claimed by counsel, is, that it was neither published in a newspaper in Hinsdale county, which is one of the counties in district No. 20, nor posted in that county. This is assumed as a fact, because of the absence of any affidavit showing that notice was posted or published in the county of Hinsdale. By the constitution the district courts of this state are courts of general jurisdiction, both in law and equity. By virtue of the authority thus conferred such courts, independent of statutes, have jurisdiction in matters pertaining to the adjustment

of water rights for the purposes of irrigation. *Broadmoor D. Co. v. Brookside W. & I. Co.*, 24 Colo. 541. The statutes do not extend or limit the authority of the district court as to such rights. The fact that the legislature has prescribed a particular method to be followed in the adjudication of such rights does not, as claimed on behalf of appellants, render the district court, in such proceedings, one of limited jurisdiction, but it is still a court of general jurisdiction, although proceeding according to the rules and practice prescribed by the statute. So that, although no affidavit of posting and publishing in the county of Hinsdale was found in the files, the conclusive presumption attaches upon a collateral attack, unless the record affirmatively exhibits the contrary, that everything necessary to be done was done, in order to invest the court with jurisdiction to adjudicate the water rights of district No. 20, by the proceedings for that purpose instituted in 1889.— *Newcomb's Executors v. Newcomb*, 26 Am. Rep. 222; Freeman on Judgments, 4th ed., § 124; *Van Waggenen v. Carpenter*, 27 Colo. 444; *Burris v. Craig*, 34 Colo. 383; 17 Am. & Eng. Enc. Law (2d ed.) 1080-1.

The decree of 1891 recites, in effect, that due and legal notice was given in all respects according to the provisions of the statute. In the face of this recital, the mere absence from the judgment roll of proofs which ought to have been included does not make it affirmatively appear from the face of the record that the district court had no jurisdiction to enter the decree because the required notice had not been given.

Many adjudications of water rights under the statutes in this state were had in what were comparatively remote districts at an early day, where the facilities for preserving the files and records were inadequate, by reason of which, no doubt, in

many instances they have become lost or mislaid. It would impose a great hardship, if not a positive loss, upon the owners of water rights to adopt the view that the district courts .of this state, in the adjudication of water rights under the statute, were courts of limited jurisdiction, and that the claimant of a water right was required to show affirmatively that all steps prescribed by the statute had been taken, in order to vest the court with jurisdiction to adjudicate water rights in accordance with the statute.

Water rights are of the first importance to the farmers of this state. Without them farms are of but little value. Relying upon the title to water rights evidenced by adjudication proceedings, farmers have brought their lands under cultivation and expended large sums of money, as well as labor, in making improvements. To now deprive them of these rights would despoil them of the benefits of their expenditures and years of labor. To impose upon them, in case of a collateral attack, the burden of showing affirmatively that all steps had been taken to authorize the court to render the decree relied upon, would in many instances work this result. While it is true that, under the doctrine of some jurisdictions, the district courts of this state, in adjudicating water rights under the statute, would be held courts of limited jurisdiction, we prefer to adopt the rule, supported by abundant authority, that our district courts in such proceedings are courts of general jurisdiction, and thus protect the claimants of adjudicated water rights from the possibility of losing the fruits of their toil by the neglect or inadvertence of persons for which they are not responsible.

During the year 1892 a tunnel, called the Nelson, was driven into the mountain from a point on the west side of West Willow creek, a tributary of the

Rio Grande river. A volume of water equivalent to something like nineteen cubic feet per second of time flows from this tunnel and finds its way into the river. The appellants, owners of what is termed the Nelson tunnel water right, complain of the judgment of the lower court because they were denied the right to the use of this water, although they had filed statements of claim thereon, and in pursuance thereof, had diverted water from the stream. Their point of diversion is upwards of thirty miles below the point where the water from the tunnel finds its way into the river. They had no interest in the tunnel whatever, nor have they succeeded by purchase, or otherwise, to whatever rights the persons who drove this tunnel may have had in such water. It is claimed on their behalf that the water flowing from the tunnel was percolating; that it did not appear from the testimony that, except for driving the tunnel, it would ever have found its way to the river; and that it appears this water constitutes an actual increase to the natural volume of the river. None of these questions are material. The claimants expended no money or labor, in the way of driving the tunnel from which the water flows, nor have they purchased any rights which the persons driving the tunnel might have had therein. The water from the tunnel finds its way to the stream and has become a part thereof. It inures to the benefit of all taking water therefrom. In this particular water the claimants have no interest or right which will permit them to segregate a volume of water equal to that flowing from the tunnel, even if it be an actual increase, and assert an exclusive right thereto as against others diverting water from the stream.—*La Jara Creamery & Live Stock Association v. Hansen*, 35 Colo. 105.

Messrs. Annis and Stow appear as *amici curiae*, and urge that the judgment of the lower court should

be reversed in so far as it affects the Jessup ditch, for the reason that the appropriation of that ditch having been made in 1874, previous to the adoption of the constitution and previous to the enactment of the adjudication statutes, its rights could not be affected by the provisions of the statute, or the adjudication proceedings thereunder, so as to work a forfeiture of appropriation.

Inasmuch as the owner of the Jessup ditch has seen fit to rest his right to have his appropriation now determined solely upon the ground that the notice in the original proceeding is insufficiently published, the court will not determine or pass upon other questions which might have been raised, and which are suggested by the *amici curiae.*

The judgment of the district court is affirmed.

Decision *en banc.*                    *Affirmed.*

Mr. JUSTICE GODDARD not participating.