[No. 5342.]

# Town of Sterling et al. v. The Pawnee Ditch Extension Company.

**1.  Water Rights—Nature of Rights—"Property"—Domestic Purposes—Eminent Domain.**

Rights to the use of water for a beneficial purpose, whatever the use may be, are property and protected by art. 2, § 15, Colo. const., providing that private property shall not be taken or damaged for public or private use without just compensation; and article 16, § 6, declaring that those using water for domestic purposes shall have preference over those using for any other purpose, does not entitle one desiring to use water for domestic purposes to take it without compensation from another who has previously appropriated it for some other purpose.—P. 426.

**2.  Water Rights—Cities and Towns—Right to Divert Water—Compensation—Statutory Construction.**

Mills' Ann. Stats., § 4403, subd. 73, authorizing a town to take water from any stream or spring for domestic purposes, and providing that, when the taking shall materially interfere with the vested rights of any person, the town shall first obtain consent or acquire the right by condemnation, does not give the town the right to divert water for the use of its inhabitants superior to the right of an individual or a farming community to divert water for domestic or other purposes, in the sense that the town may take the water for that purpose, without compensation, from those who have previously appropriated it for the same or some other beneficial use.—P. 427.

**3.  Water Rights—Persons Entitled to Divert Water.**

·The right to water appropriated for domestic purposes does not depend on the locus of its use for such purposes; but, in addition to towns and cities, it may be diverted by one not a riparian owner.—P. 427.

**4.  Water Rights — Diversion — Beneficial Use—"Appropriation."**

A diversion of water not applied to some beneficial use does not constitute an appropriation.—P. 428.

**5.  Water Rights — Appropriations — Quieting Title — Pleading Complaint—Sufficiency.**

A complaint to quiet title to appropriations of water, claimed to have been made for domestic and irrigation purposes, should allege what volume of water diverted reaches the consumers under the ditch, how many consumers there are, the distance the water is carried, the area of land to which applied, when

applied, what volume is actually consumed for domestic and irrigation purposes, and when the ditch was completed; the rule being that in pleading an appropriation of water the acts constituting such appropriation must be stated, and not merely legal conclusions, so that upon inspecting such pleading it can be determined whether or not the facts stated constitute in law a valid appropriation.—P. 429.

6.  Water Rights—Diligent Care—Preventing Waste.

The law contemplates an economical use of water, and it will not countenance a diversion, which, on account of the loss resulting from the appliances used to convey it, is many times that actually consumed at the point where utilized; and an appropriator of water must, therefore, exercise a reasonable degree of care to prevent waste through seepage and evaporation in conveying it to the point where it is used.—P. 430.

7.  Water Rights — Quieting Title — Pleading—Complaint—Sufficiency.

A complaint to quiet title to appropriations of water claimed to have been made for domestic and irrigation purposes, and to restrain a town from diverting the same for its use, need not allege that the town had not commenced proceedings to condemn the water, or had not acquired the right to appropriate the same by consent of the residents on the stream, since such facts are purely matters of defense.—P. 431.

8.  Water Rights—Quieting Title—Ditch Companies—Parties.

A ditch company may maintain an action to protect the rights of the consumers of water through its ditch without joining such consumers as parties plaintiff.—P. 431.

*Error to the District Court of Logan County.
Hon. E. E. Armour, Judge.*

Action by The Pawnee Ditch Extension Company against the town of Sterling and J. E. Hurd. From a judgment for plaintiff, defendants bring error.                    *Reversed and remanded,
with directions.*

Decision *en banc*, Chief Justice Steele not participating.

Messrs. Munson & Munson and Messrs. Allen & Webster, for plaintiffs in error.

Mr. Geo. E. McConley and Mr. H. P. Burke, for defendant in error.

Mr. Justice Gabbert delivered the opinion of the court:

Defendant in error, plaintiff in the court below, brought suit against the plaintiffs in error, as defendants, the purpose of which was to quiet title of plaintiff in appropriations of water which it claimed to have made for domestic and irrigation uses, and for an injunction against the defendants to restrain them from diverting for their use, or interfering in any manner with, such appropriations, to the injury of plaintiff. To the complaint filed the defendants interposed a demurrer upon three grounds: (1) Want of jurisdiction of the court of the subject-matter of controversy; (2) that the complaint did not state a cause of action; and (3) that there was a defect of parties plaintiff, because the consumers of water through plaintiff's ditch were not joined with plaintiff as parties plaintiff in the action. This demurrer was overruled. The defendants elected to stand thereon, and judgment was rendered for plaintiff. The defendants bring the case here for review on error.

In substance the complaint states that plaintiff is a corporation duly organized and existing under the laws of this state; that it owns, controls and operates an irrigating ditch known as the "Extension of the Pawnee Ditch"; that this ditch is used for the purpose of carrying and distributing water for irrigation and domestic purposes, to the members of its company, who own land under it, and are consumers of the water so carried and distributed; that the town of Sterling is a municipal corporation organized and existing under the laws of this state; that the ditch in question was constructed by the pre-

decessors in interest of plaintiff from a point on the west side of Springdale creek to the terminus of another ditch known as the Pawnee; that the work of construction was begun on May 26th, 1898, and thereafter carried on with diligence until completed. The dimensions of the ditch are given, it being alleged that its carrying capacity is twenty-five cubic feet per second of time, and that the water conducted through such ditch from the date of its completion has been applied to the irrigation of lands lying thereunder, and used by the owners of such lands for domestic purposes continuously since that time. It is alleged that the source of supply for this ditch is the surplus water of Pawnee ditch and the waters of Springdale creek, which are diverted at the point where it intersects this creek. This creek, it is alleged, is a natural water course, supplied by springs which rise about one mile above the point of the intake of plaintiff's ditch, and flow, approximately, 200,000 gallons of water each twenty-four hours. It is also alleged that the water thus appropriated in connection with the surplus waters of Pawnee ditch is not more than sufficient to supply the needs of the consumers under plaintiff's ditch for domestic and irrigation uses; that during the season from October 1st to May 1st the entire supply of such ditch is derived from the springs above mentioned, and that the supply thus obtained is not enough to furnish the consumers through plaintiff's ditch with water sufficient for their domestic needs during that period, and that during the remainder of each season the water in controversy is utilized by such consumers for domestic and irrigation purposes. It then charges that the town of Sterling has recently purchased the lands upon which springs supplying Springdale creek rise, and has commenced to construct a system of water works to supply the inhab-

itants of the town with water, the intention being to take its supply from these springs, and convey it by means of a pipe line about six miles in length, that being approximately, the distance the town is situate from the springs.

No argument is made on behalf of defendants in support of the ground of demurrer to the effect that the court was without jurisdiction of the subject-matter of controversy, and we shall pass that question without discussion.

In support of the claim that the complaint does not state facts sufficient to constitute a cause of action, counsel for defendants advances these propositions:

(1) That the town of Sterling, by virtue of the laws of the state, is entitled to appropriate the waters of Springdale springs without compensating plantiff.

(2) That, as the consumers under plaintiff's ditch are not riparian owners, they have no right to divert water through the ditch to supply their domestic needs.

(3) That it does not appear from the complaint that consumers under plaintiff's ditch have any benefit of the water in controversy during the season beginning October 1st and ending May 1st, and is otherwise deficient in failing to state facts from which an appropriation can be deduced.

(4) It does not appear from the allegations of the complaint that the town has not commenced proceedings to condemn the water in question, or has not acquired the right to appropriate such water by consent of residents on the stream whose rights would be materially affected by such appropriation.

By subdivision 73 of § 4403, Mills' Ann. Stats., towns are authorized to take water in sufficient quantity from any stream or spring to supply the do-

mestic needs of their inhabitants, provided, "that if the taking of such water in such quantity shall materially interfere with, or impair, the vested right of any person or persons, or corporation, heretofore acquired, residing upon such creek, gulch, or stream, or doing any milling or manufacturing business thereon, they shall first obtain the consent of such person or persons, or corporation, or acquire the right of domain by condemnation, as prescribed by the constitution and laws upon that subject, and make full compensation or satisfaction for all the damages thereby occasioned to such person or persons, or corporation."

This statute went into effect July 3, 1877, and as we understand the argument of counsel for the town, it is urged that inasmuch as the rights of plaintiff did not attach to the water in controversy until 1898, that its rights were acquired subject to the right of the town to appropriate and divert the water of Springdale springs, and without compensating plaintiff. If the statute in question is susceptible of such a construction, then it is clearly unconstitutional. Section 6, art. XVI, of the constitution states that those using water for domestic purposes shall have the preference over those claiming for any other purpose, but this provision does not entitle one desiring to use water for domestic purposes, as intended by the defendant town of Sterling, to take it from another who has previously appropriated it for some other purpose, without just compensation. Rights to the use of water for a beneficial purpose, whatever the use may be, are property, in the full sense of that term, and are protected by § 15, art. II, of our constitution, which says that "private property shall not be taken or damaged for public or private use without just compensation."

In this dry and arid region, a right to the use of

water appropriated for beneficial purposes is of great value because of the many enterprises carried on which are dependent upon its use. In many instances such enterprises would be rendered valueless if the right to the use of water necessary to carry them on was taken away; and unless such rights were fully protected, it would be hazardous, to say the least, to embark in any enterprise dependent upon an appropriation of water, if such appropriation was subject to the right of any municipality within the state to take the water representing such appropriation to supply its inhabitants, without compensating the appropriator. That a city or town cannot take water for domestic purposes which has been previously appropriated for some other beneficial purpose, without fully compensating the owner, is so clear that further discussion seems almost unnecessary. Any other conclusion would violate the most fundamental principles of justice, and result in destroying most valuable rights. It would violate that right protected by our constitution, that property shall not be taken from the owner either for the benefit of the public or for private use, without compensation to the owner. The right of a city to divert water for the use of its inhabitants is not superior to the right of an individual, or a farming community, to divert water for domestic or other purposes, in the sense that the city may take water for that purpose from those who have previously appropriated it for the same, or some other, beneficial use, without compensating the senior appropriators. —*Montrose Canal Co. v. Loutsenhizer D. Co.,* 23 Colo. 233.

Such is the plain meaning of the statute upon which defendants rely.

The contention of counsel for defendants that water cannot be diverted from a stream for domestic

use, except by towns and cities, by one not a riparian owner, is not tenable. The right to water appropriated for domestic purposes does not depend upon the *locus* of its use for those purposes.—*Coffin v. Left Hand D. Co.*, 6 Colo. 444.

The *Loutsenhizer case, supra,* and *The Broadmoor D. Co. v. Brookside W. & I. Co.*, 24 Colo. 541, do not sustain the contention of counsel on the proposition under consideration. In the former case it was held that the domestic use mentioned in the constitution was the right of the riparian owner to take water for himself, his family, or his stock, and the like, but that this right could not be exercised to the detriment of prior appropriators by permitting a diversion through a long canal to points remote from the stream to supply such domestic needs, without compensating prior appropriators. In the latter case it was decided that the rights of a riparian owner to water for domestic purposes could not be conveyed separate and apart from the land, and, therefore, the water incident to that right could not be diverted from the stream and used elsewhere.

The proposition that the complaint does not state facts from which it appears that the consumers under plaintiff's ditch have any benefit of the water diverted from Springdale creek during the season beginning October 1st and ending May 1st, and is otherwise deficient in failing to state facts, was more fully presented on oral argument than in the briefs. The complaint does not state whether any water so diverted during this period ever reaches plaintiff's consumers. In fact, it might be said, from the statements of the complaint, that it does not; and, of course, if this be true, an appropriation is not stated, for a diversion which is not applied to some beneficial use does not constitute an appropriation.—*Ft. Morgan L. & C. Co. v. South*

*Platte D. Co.*, 18 Colo. 1; *Farmers' Ind. D. Co. v. Agricultural D. Co.*, 22 Colo. 513.

The complaint should state clearly what volume of water diverted does reach the consumers under plaintiff's ditch during that period; how many consumers there are; the distance it is carried through the Pawnee Extension Ditch; the area of land to which it is applied; when it was applied; what volume is actually consumed for domestic and irrigation purposes, and when the ditch was completed. In brief, a succinct statement of the facts upon which plaintiff relies to establish an appropriation for domestic and irrigation purposes. It has been repeatedly held, following *Farmers' H. L. C. & R. Co. v. Southworth,* 13 Colo. 111, that in pleading an appropriation of water, the acts constituting such appropriation must be stated, and not merely legal conclusions, so that upon inspection of such pleading it can be determined whether or not the facts stated constitute, in law, a valid appropriation of water for a beneficial use.

There is another particular in which the complaint is fatally defective, in that it *prima facie* appears from its averments that the greater part of the water diverted into the Pawnee Extension Ditch during the season beginning October 1st and ending May 1st, is lost. According to the statements in the complaint, the entire supply of water for plaintiff's ditch during the season in question is derived from Springdale creek. It appears that the capacity of the ditch of plaintiff, through which this water is conveyed, is twenty-five cubic feet per second of time, and that the water from Springdale creek does not exceed one-third of a cubic foot per second of time. This is a very small volume to undertake to convey through a ditch of so great capacity. It is a matter of common knowledge that in doing so

necessarily a very great proportion of such volume would be lost by seepage and evaporation before it was conveyed any considerable distance. The law contemplates an economical use of water. It will not countenance the diversion of a volume from a stream which, by reason of the loss resulting from the appliances used to convey it, is many times that which is actually consumed at the point where it is utilized. Water is too valuable to be wasted, either through an extravagant application for the purpose appropriated, or by waste resulting from the means employed to carry it to the place of use, which can be avoided by the exercise of a reasonable degree of care to prevent unnecessary loss, or loss of a volume which is greatly disproportionate to that actually consumed.—*Montrose Canal Co. v. Loutsenhizer D. Co., supra.* An appropriator, therefore, must exercise a reasonable degree of care to prevent waste through seepage and evaporation, in conveying it to the point where it is used. In cases where this question arises, the purpose for which the appropriation is made and the proportion of the diversion actually applied to a beneficial use, as compared with the volume diverted, would doubtless be important matters to consider.

According to the statements of the complaint the springs flow, approximately, 200,000 gallons each twenty-four hours. How much is diverted from the stream into plaintiff's ditch is not stated. Unless there is a great loss in the flow from the springs to the intake of plaintiff's ditch there must be a great number of consumers to be supplied with water for domestic purposes, or there is a great loss of water after it enters the ditch. It is apparent, therefore, that in order to state an appropriation of the volume claimed by plaintiff which can be upheld, it is necessary to state facts from which it will ap-

pear that the volume diverted from Springdale creek is not lost to an unnecessary degree through the failure of plaintiff to exercise a reasonable degree of care to prevent loss in carrying it to the place of use. To what extent an appropriation by plaintiff, which it is sought to utilize through a conduit of a character which would result in a loss of the volume diverted, greatly disproportionate to the volume which would reach its consumers, or which would be actually consumed by them to supply their domestic needs or rendered available for the purpose of irrigation could be upheld, is not a question upon which we express any opinion at this time. It will be time enough to determine that question when a complaint is filed from which it appears how much water of the volume diverted into plaintiff's ditch is actually consumed by those living under it, and who depend upon such diversion to supply their domestic needs, and for the purpose of irrigation, or when a case is tried and these facts established by competent testimony.

The next point made by counsel for defendants is that there is no statement in the complaint to the effect that the town has not commenced proceedings to condemn the water in controversy, or has not acquired the right to appropriate such water by consent of residents on the stream, whose rights would be materially affected by the town diverting the water to supply its inhabitants. We think there is no merit whatever in this contention. They are purely matters of defense, and need not be stated in the complaint.

The final question relates to an alleged defect of parties plaintiff. This proposition is based upon the ground that the consumers of water under plaintiff's ditch should be joined with plaintiff as parties to the action. A ditch company may maintain an

action to protect the rights of the consumers of water through its ditch, and it is not necessary to join such consumers with the ditch company as parties plaintiff in an action for that purpose.—*Montrose Canal Co. v. Loutsenhizer D. Co., supra; Farmers' Ind. D. Co. v. Agricultural D. Co., supra.*

The judgment of the district court is reversed and the cause remanded, with directions to sustain the demurrer upon the ground, and for the reason, that the complaint is insufficient in the respects we have pointed out, with leave to plaintiff to amend its complaint as it may be advised.

*Reversed and remanded.*

Decision *en banc*, Chief Justice Steele not participating.